RECEIVED

MAY 20 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

PRAETORIAN SPECIALTY
INSURANCE COMPANY

versus

AUGUILLARD CONSTRUCTION
CO., INC., ET AL.

CIVIL ACTION NO. 09-1108
JUDGE TOM STAGG

### MEMORANDUM RULING

Before the court is a motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue filed under Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404 by the defendants Celena Sprinkle and Breana Faith Stewart, through their guardians and conservators David Stewart, Patricia Stewart and Tracey Stewart (these parties will be collectively referred to herein as the "Stewarts"). See Record Document 11. The plaintiff in the instant case, Praetorian Specialty Insurance Company ("Praetorian"), has filed a motion in opposition. See Record Document 15. For the reasons which follow, the Stewarts' motion to dismiss or to transfer venue is **DENIED**.

# I. BACKGROUND

According to the Stewarts, on July 11, 2007, Joe Edward Johnson ("Johnson") ran through a red light in Baldwin County, Alabama, and hit an automobile driven by Tracey Stewart. See Record Document 11 at 1. At the time of this automobile accident, there were two passengers in the vehicle with Tracey Stewart; Celena Sprinkle was in the front passenger seat, and her daughter, Breana Faith Stewart, was in the back seat in a child's seat. See id. While Tracey Stewart was hurt during this incident, it seems that Celena Sprinkle and Breana Faith Stewart incurred the greater injuries. See id. at 1-2. The Stewarts represent that as a result of the accident Celena Sprinkle sustained a brain injury and is now mentally incapacitated, and Breana Faith Stewart was rendered quadriplegic. See id.

The Stewarts initiated litigation concerning this matter in Alabama, asserting claims against several parties, including Auguillard Construction Company ("Auguillard"). See id. at 2. At or around the time of the accident described above, Auguillard was one of several general contractors hired to remove debris remaining from Hurricane Katrina in Jefferson Parish, Louisiana. See Record Document 1 at 3. It appears that the Stewarts believe that at the time of the accident at issue, Johnson was either employed by Auguillard or had some other legally significant connection to Auguillard. See Record Document 11 at 2. Accordingly, the

2

Stewarts asserted that Auguillard was liable for Johnson's actions due to negligent hiring and retention practices with respect to its subcontractors and workers. The Stewarts filed a motion which, when granted, dismissed Auguillard without prejudice from the Alabama lawsuit in July of 2009.[1]  The Stewarts then filed a separate, similar civil lawsuit against Auguillard and another defendant in the Civil District Court for the Parish of Orleans on August 24, 2009. The Orleans Parish suit was subsequently removed to the Eastern District of Louisiana.  See id.

At the time of the automobile accident at issue, Praetorian had issued two policies of liability insurance to Auguillard, a commercial auto policy and a commercial general liability policy, establishing Praetorian's interest in this suit and all related lawsuits. See Record Document 1. According to Praetorian, Johnson was

---

[1]The Stewarts offer the following explanation for Auguillard's dismissal from the Alabama lawsuit:

> In April of 2009, Auguillard's motion to dismiss for lack of personal jurisdiction was denied by the Mobile County Circuit Court in Alabama, and Auguillard filed a petition for writ of mandamus with the Alabama Supreme Court. The Alabama Supreme Court filed a motion to stay the action pursuant to that writ.  Rather than delay the action against other defendants, which was set for trial in September of this year, the Stewarts voluntarily dismissed Auguillard without prejudice from the action.  The voluntary dismissal was granted on July 1, 2009 . . . .

Record Document 11 at 2.

3

an employee of another contractor performing work in south Louisiana at the time of the accident, not an employee of Auguillard.  Praetorian further argues that Johnson's presence in Alabama at the time of the auto accident was not related to any activity of Auguillard, i.e., he was not an employee of Auguillard or on a mission for Auguillard at the time of the accident.  Moreover, Praetorian asserts the vehicle driven by Johnson at the time of the accident was not owned by Auguillard. Accordingly, Praetorian initiated the instant case in this court on July 6, 2009, seeking a declaratory judgment recognizing that the policies of insurance issued by Praetorian to Auguillard provide no coverage for damages and losses arising from and/or related to the vehicular accident involving the Stewarts and Johnson.  See id. at 2-3. Subsequently, the Stewarts filed the pending motion to dismiss or to transfer venue.  See Record Document 11.

## II.  LAW AND ANALYSIS

In their present motion, the Stewarts ask that this court dismiss Praetorian's lawsuit for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer this action to the Eastern District of Louisiana.  See Record Document 11. Each of these arguments will be considered in turn.

4

**A.     Personal Jurisdiction.**

When nonresident defendants, like the Stewarts, move to dismiss for lack of

personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure,

the plaintiff bears the burden of demonstrating the district court's jurisdiction over

the defendants. See Gardemal v. Westin Hotel Co., 186 F.3d 588, 592 (5th Cir.

1999). "When, as in this case, the district court rules on the motion without an

evidentiary hearing, the plaintiff may satisfy its burden by presenting a prima facie

case for jurisdiction." See id. "In deciding whether a prima facie case has been

made, uncontroverted allegations in the plaintiff's complaint must be taken as true,

and conflicts between the facts contained in the parties' affidavits must be resolved

in the plaintiff's favor." Id. (citation and quotations omitted).

The requirement that a court have personal jurisdiction over a defendant is

intended to protect a defendant's individual liberty interests. See Ins. Corp. of

Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct.

2099, 2104 (1982). Because the requirement of personal jurisdiction represents an

individual right, it can, like other such rights, be waived. See id. at 703, 102 S.Ct.

at 2105. "A variety of legal arrangements have been taken to represent express or

implied consent to the personal jurisdiction of the court." Id. Thus, one method of

establishing a prima facie case of personal jurisdiction is for the plaintiff to establish

5

that the defendant has waived objection to or consented to the personal jurisdiction of the court.[2]

In the absence of evidence of the defendant's consent, a federal court sitting in diversity may determine whether personal jurisdiction exists by ascertaining:

> [I]f (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution. A district court must determine whether both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction.

Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008) (citations and quotations omitted). "In the instant case, these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause [of the Fourteenth Amendment]." Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir.1990).

---

[2]In General Contracting & Trading Co., L.L.C. v. Interpole, Inc., 940 F.2d 20, 22-23 (1st Cir.1991), the First Circuit observed that although "it is possible to attempt fine distinctions between 'waiver' and 'consent,'" in a personal jurisdiction analysis, such distinctions were "artificial and unnecessary, at least for the purpose" of the analysis which was required in that case. Similarly, in the case at bar, the court does not find it necessary to distinguish between waiver and consent. As will be explained herein, whatever label one assigns to the Stewarts' actions, it is clear that they have submitted themselves to the personal jurisdiction of courts located in the forum state at issue, Louisiana, for purposes of the adjudication of claims arising from the nucleus of operative facts which gave rise to the Stewarts' Orleans Parish lawsuit.

"Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" Johnston, 523 F.3d at 609 (quotations and citations omitted). "The 'minimum contacts' prong can be subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 295 (5th Cir. 1999). "Exercise of specific jurisdiction is only appropriate when the nonresident's contacts with the forum state arise from or are directly related to the cause of action." Id. (footnote omitted). "Even a single act by a nonresident defendant by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, may be sufficient to establish specific personal jurisdiction." Tel. Elec. Corp. v. S. Pac. Telecomm. Co., No. 95-31037, 1996 WL 556856, at * 3 (5th Cir. Sept. 10, 1996) (internal quotation marks omitted) (citing Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993)). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." Marathon Oil Co., 182 F.3d

at 295 (footnotes omitted). The second prong of the due process inquiry, i.e., consideration of "traditional notions of fair play and substantial justice," requires "examination of the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the shared interest of the several states in furthering fundamental social policies." Polythane Sys., Inc. v. Marina Ventures Intern., Ltd., 993 F.2d 1201, 1206 (5th Cir.1993) (quotations and citations omitted).

To reiterate, Praetorian initiated the case at bar on July 6, 2009. See Record Document 1. Just over a month-and-a-half later, the Stewarts initiated a lawsuit in the Civil District Court for the Parish of Orleans on August 24, 2009, which arises out of the same nucleus of operating facts as the case at bar. See Record Document 15 at 2-5; Record Document 11 at 2.

Relying primarily on the First Circuit's decision in General Contracting & Trading Co., L.L.C. v. Interpole, Inc., 940 F.2d 20 (1st Cir.1991),[3] Praetorian argues that the Stewarts consented to the personal jurisdiction of this court for the purposes of the instant case when they filed a lawsuit in August of 2009, in Orleans Parish, which arises out of the same nucleus of operating facts as the case at bar. See Record Document 15 at 2-3; Record Document 11 at 2. Praetorian also argues that

---

[3]The court notes in passing that a recent Westlaw search indicated that the First Circuit's decision in Interpole, supra, has been positively cited by forty-eight cases.

8

the lawsuit filed by the Stewarts in Orleans Parish gives rise to specific jurisdiction in this court to adjudicate the instant case.  <u>See</u> Record Document 15 at 6-7. Finally, Praetorian argues that certain contacts related to the filing of the Orleans Parish suit also give rise to general jurisdiction in this court over the Stewarts. <u>See</u> <u>id.</u> at 8.

Citing a case from a district court in Illinois and a case from the Eighth Circuit,[4] the Stewarts argue that personal jurisdiction is determined at the time a

---

[4]The Stewarts cite <u>Central States Southeast and Southwest Areas Pension Fund v. PhenCorp. Reinsurance Co., Inc.,</u> 530 F. Supp. 2d 1008, 1016-1017 (N.D. Ill. 2008), and <u>Pecoraro v. Sky Ranch for Boys, Inc.,</u> 340 F. 3d 558, 561-562 (8th Cir. 2003), in support of this proposition.  These cases are not binding upon this court. Furthermore, as is explained in a subsequent section of this ruling, the court has determined that it does not have general jurisdiction over the Stewarts.  The resolution of the pending motions rests upon the concepts of specific jurisdiction and consent or waiver. Given this determination, the citations noted above add little to the court's analysis.

In <u>Central States,</u> the court began its discussion with the following statement:

Central States concedes that *specific jurisdiction* cannot be the basis for this Court's personal jurisdiction over Phencorp.  Thus, we only address whether the Court has *general jurisdiction* over Phencorp.

530 F. Supp.  2d at 1016 (emphasis added).  Thus, it is clear that the discussion in that case concerns solely general jurisdiction, and does not address the concepts which will govern the court's ruling on the present motions.

In <u>Pecoraro,</u> the Eight Circuit did not distinguish its specific jurisdiction analysis from its general jurisdiction analysis.  340 F.3d at 561-63. Moreover, the

lawsuit is filed.  See Record Document 11 at 3.  The Stewarts argue that if this court

examines only this time period, the period preceding and including the time when

Praetorian filed suit in this court, then it is clear that this court does not have

personal jurisdiction, either general or specific, because the Stewarts did not

manifest minimum contacts with the state of Louisiana during this time period.  See

id.  Moreover, the Stewarts argue they did not have sufficient minimum contacts

with the Western District of Louisiana during the relevant time period to establish

personal jurisdiction in this court.  See id.  at 4.  In other words, the Stewarts imply

that there must be minimum contacts with the federal district within which this court

resides before personal jurisdiction is established, not simply minimum contacts

with the state of Louisiana.

       To address Praetorian's consent and waiver argument, the Stewarts rely on

a selective quotation from the Louisiana Code of Civil Procedure. Article six of that

code, Part A, provides that:

_____

case does not contain any compelling reasoning to support the application, in this
case, of the rule the Stewarts endorse, i.e., that this court should not look at the
Stewarts' contacts with Louisiana following the filing of the instant lawsuit when
determining specific jurisdiction.  Without more, the court does perceive that the
language in the Pecoraro opinion is persuasive as to the particular rules which
govern the specific jurisdiction analysis in this case.

> Jurisdiction over the person is the legal power and authority of a court to render personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
>
> . . . .
>
> (3) the submission of the party to the jurisdiction of **the** court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.

La. Code Civ. Proc. art. 6(A) (emphasis added).  The Stewarts emphasize the reference in this code article to "the court," and argue that since they have filed no action in the Western District of Louisiana, they have not submitted to the jurisdiction of *this* court.

### 1.    Consent And/Or Waiver.

The court first notes that the code article quoted above does not restrain the court's analysis of the consent and waiver issue. See La. Code Civ. Proc. art. 6(A). Part B of this code article states:

> In addition to the provisions of Paragraph A, a court of this state may exercise personal jurisdiction over a nonresident on *any basis* consistent with the constitution of this state and with the Constitution of the United States.

La. Code Civ. Proc. art.  6(B) (emphasis added).  Furthermore, the Louisiana Supreme Court has held that:

11

> Personal jurisdiction may attach through compliance with Louisiana
> Code of Civil Procedure article 6 or through one of several statutory
> bases, including the UIFSA in Children's Code article 1302.1, and the
> Long-Arm Statute, La.Rev.Stat. § 13:3201.

Amin v. Bakhaty, 798 So.2d 75, 89 (La. 2001). As previously discussed, "Louisi-

ana's long-arm statute permits service of process coterminous with the scope of the

due process clause [of the Fourteenth Amendment]." Asarco, Inc. v. Glenara, Ltd.,

912 F.2d 784, 786 (5th Cir. 1990).

The court is persuaded by the case law cited by Praetorian that under the

doctrine of consent and waiver, this court has personal jurisdiction over the

Stewarts.    Again, Praetorian's arguments regarding consent and waiver rest

primarily upon the First Circuit's decision in Interpole, 940 F.2d 20. In that case,

the First Circuit considered the arguments of an out-of-state, corporate defendant

who claimed that a New Hampshire federal district court lacked personal

jurisdiction to adjudicate claims regarding it as to one suit, even though, subsequent

to the filing of that suit, the out-of-state, corporate defendant initiated a second suit

in the same New Hampshire federal district court based on the same nucleus of facts

which gave rise to the first suit.  See id.  at 21-22. In Interpole, the First Circuit

noted that a party's consent to a court's personal jurisdiction may take place prior

12

to the suit's institution, at the time the suit is brought or *after the suit in the contested forum has been initiated*. See id. at 22.[5] The First Circuit then reasoned that "by bringing Suit No. 2, [the out-of-state, corporate defendant] submitted itself to the district court's jurisdiction in Suit No. 1." Id. at 23.

> [The defendant] *elected to avail itself of the benefits of the New Hampshire courts* as a plaintiff, starting a suit against Interpole. By so doing, we think it is inevitable that [the defendant] surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of *the same transaction or arising out of the same nucleus of operative facts.*

Id. (emphasis added). [6]

---

[5]See also Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc., 104 F. App'x 376, 379-80 (5th Cir. 2004) (noting that in several cases other circuits have concluded that a defendant may waive a properly pleaded personal jurisdiction defense, and manifest an intent to submit to a court's jurisdiction, by the conduct they exhibit during the litigation process); Restatement (Second) of Conflict of Laws 2d § 32, comment d (1971) ("Consent may be given with respect to a particular action either *after the action has been brought* or before the action has been brought . . . .") (emphasis added).

[6]As the Ninth Circuit has observed, Interpole obviously primarily addresses consent-based personal jurisdiction, but also, at least in part, addresses specific jurisdiction, as it invokes the language pertinent to that doctrine. See Dow Chem. Co. v. Calderon, 422 F.3d 827, 834-35 (9th Cir. 2005). For instance, the court in Interpole stated that "[u]pholding the forum court's assumption of jurisdiction over Trastco in Suit No. 1 seems a small price to exact for allowing Trastco purposefully to avail itself of the benefits of a New Hampshire forum as a plaintiff in Suit No. 2." Interpole, 940 F.2d at 24 (citation omitted). This language reflects the language

13

The Fifth Circuit has, in apparent approval, noted the Interpole decision in dicta in at least two cases. In 2004, the Fifth Circuit summarized Interpole as follows: "[A] defendant waived its jurisdictional defense by suing the plaintiff in the objectionable *forum* in a second suit involving the same facts." Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc., 104 F. App'x 376, 380 (5th Cir. 2004) (emphasis added); see also PaineWebber Inc. v. The Chase Manhattan Private Bank, 260 F.3d 453, 460 (5th Cir. 2001) (foreshadowing the above-quoted statement with similar language).[7] In 2001, the Fifth Circuit cited the Interpole decision as evidence of "the well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections." PaineWebber Inc., 260 F.3d at 459 n.6 (5th Cir. 2001); see also Brokerwood Prods. Int'l Inc., 104

---

used in the Supreme Court's guiding precedent regarding specific jurisdiction. See e.g. Dow Chem. Co., 422 F.3d at 835 n.6 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 and 477, 105 S.Ct. 2174, 2182-83 and 2184-85 (1985)).

[7] In PaineWebber Inc., the Fifth Circuit found that the case before it was unlike Interpole because "the party seeking to avoid the court's jurisdiction [had not] chosen to commence the action *or a related action* in the very forum in which it [was] contesting personal jurisdiction . . . ." PaineWebber Inc., 260 F.3d at 460 (emphasis added).

14

F. App'x at 380 n.3 (restating this same principle and citing <u>PaineWebber</u> which, in turn, cites <u>Interpole</u>).

This court notes with interest that in <u>Brokerwood Products International</u> the Fifth Circuit used the word "forum" instead of "court" when summarizing the meaning of <u>Interpole</u>. <u>See</u> <u>Brokerwood Prods. Int'l Inc.</u>, 104 F. App'x at 380 ("a defendant waived its jurisdictional defense by suing the plaintiff in the objectionable *forum* in a second suit involving the same facts"). In <u>Brokerwood Products International</u>, the Fifth Circuit was considering a case pursuant to diversity jurisdiction, in such cases the use of the word "forum" in a personal jurisdiction analysis is generally understood to refer to the *state* in which a court resides, not simply a particular *court*. <u>See</u> <u>McFadin</u>, 587 F.3d at 759; <u>Burger King Corp.</u>, 471 U.S. at 472-473, 105 S.Ct. at 2182-2183.[8]  The language utilized by the Fifth Circuit in <u>Brokerwood Products International</u> reflects the broader reasoning of the First Circuit's decision in <u>Interpole</u>.  Although the facts underlying <u>Interpole</u> involved two suits filed in the same New Hampshire federal district court, the First Circuit held that the federal district court had personal jurisdiction over the out-of-

---

[8]<u>See</u> <u>also</u> <u>infra</u> p. 21 and nn. 11-12 .

state, corporate defendant because the defendant had elected to avail itself of the benefits of the "New Hampshire *courts*" (plural) as a plaintiff in the second suit which was based on the same facts which gave rise to the first suit. Interpole, 940 F.2d at 23 (emphasis added). Citing Supreme Court precedent, the First Circuit then noted that in the context of personal jurisdiction it is settled that the concept of a "state's courts" includes all of the federal *and* state courts within a state. Id. at 23 n.4. In other words, the significance of the out-of-state, corporate defendant's actions in Interpole was not limited to the fact that the defendant filed a second lawsuit *in the very federal district court* where the lawsuit in which it was contesting personal jurisdiction was pending. Rather, it was significant that the defendant voluntarily chose to initiate the second lawsuit in *a New Hampshire court*.

Based on the broader reasoning of Interpole discussed above, at least two federal district courts have found that out-of-state defendants who filed lawsuits in a state court waived their right to assert that a federal court in the same forum (i.e., the same state) lacked personal jurisdiction over that defendant for purposes of adjudicating claims which were related to the same facts which gave rise to the state court suit. See Marron v. Whitney Group, 662 F.Supp.2d 198 (D. Mass. 2009);

Larson v. Galliher, No. 2:06-CV-1471-RCJ-GWF, 2007 WL 81930 (D. Nev. Jan.
5, 2007).  Based on the case law cited above, this court likewise finds that when the
Stewarts elected to file a lawsuit in the Civil District Court for the Parish of Orleans
which arose from the nucleus of operative facts which formed the basis of the suit
currently pending in this court, the Stewarts waived objection to or consented to the
personal jurisdiction of this court for purposes of the instant case.

### 2. Specific And General Jurisdiction.

Alternatively, the court finds that the Orleans Parish suit gave rise to specific
jurisdiction in this court to adjudicate the case at bar. The "constitutional touch-
stone" of the specific jurisdiction component of the personal jurisdiction analysis
is the determination that there is some act or series of acts by which the defendant
"purposefully avails" itself of the privilege of conducting activities within the forum
state, thus invoking the benefits and protections of the forum state's laws. See
Burger King Corp., 471 U.S. at 475-76, 105 S.Ct. at 2183-84. This "purposeful
availment" requirement ensures that a defendant will not be haled into a jurisdiction
solely as a result of "random," "fortuitous," or "attenuated" contacts. Id. at 475,
105 S.Ct. at 2183. "[W]here the defendant" avails himself of the "benefits and

17

protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id. at 475-476, 105 S.Ct. at 2184. Citing Interpole, supra, at least two district courts in this circuit have noted that there is no better textbook example of a non-resident invoking or availing themselves of the benefits, privileges and protections of a state than a non-resident initiating a lawsuit in a forum state's courts. Accordingly, these federal district courts found that they had specific jurisdiction to adjudicate claims against certain out-of-state defendants which were related to the nucleus of operative facts which gave rise to the lawsuits the out-of-state defendants themselves had elected to file in state courts in the forum state where the district courts were located. See Kennedy Ship & Repair, L.P. v. Loc Tran, 256 F.Supp.2d 678, 684 (S.D. Tex. 2003); Int'l Trans. v. Embotelladora Agral Region-Montana SA DE CV, 277 F.Supp.2d 654, 667-668 (S.D. Tex. 2002).[9]

Similarly, in this case, the court finds that the Stewarts have availed themselves of the benefits, privileges and protections of Louisiana by initiating a

---

[9]At least one other district court in this circuit has expressed agreement with the legal principles discussed above. See Rossi v. Wohl, No. 3-06-CV-0292-M, 2006 WL 2371307, at *3-4 (N.D. Tex. Aug. 16, 2006) (reversed on other grounds).

18

lawsuit in Orleans Parish. Furthermore, the case at bar is also *related to* the lawsuit which the Stewarts filed in Orleans Parish. See Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009) ("Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of *or relates to* activities that the defendant purposefully directed at the forum state.")(emphasis added); see also Burger King Corp., 471 U.S. at 471-72, 105 S.Ct. at 2181-82; Religious Tech. Ctr v. Liebreich, 339 F.3d 369, 375 (5th Cir. 2003) ("A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action *relates to* the act.") (emphasis added). Thus, this court finds it has specific, personal jurisdiction over the Stewarts for the purpose of adjudicating the instant case.

The defendants themselves freely chose to bear the burden of prosecuting their claims within this state, thus there is no valid claim that this court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. The Stewarts argue that "Breana Faith Stewart's medical condition, and the life-threatening, inconvenience caused to her through the prosecution of an action more than 400 miles from where she currently resides" in Alabama presents a

19

compelling reason why "due process would not permit this action to proceed in this district even if minimum contacts did exist." Record Document 11 at 5. The defendants have also asserted this argument in support of their motion to transfer venue. See Record Document 11 at 8-9. To reiterate, Breana Faith Stewart was the child in the back seat of the vehicle hit by Johnson; she was, at the time the present motions were filed, four years old and she is presently quadriplegic. See Record Document 15 at 14, Record Document 11 at 1-2 and Ex. A at 1-2. As will be discussed in greater depth in the section of this ruling addressing the motion to transfer venue, the court agrees with Praetorian's argument as to this issue and does not believe that Breana Faith Stewart's presence will be required for any hearing held in this court. In the instant action, Praetorian seeks a declaratory judgment based on an interpretation of insurance policy terminology. Without more, the court fails to see how Breana Faith Stewart's testimony or presence is relevant to this inquiry. See Record Document 15 at 14. Thus, the unfortunate health concerns of Breana Faith Stewart do not create a situation where due process would be violated by this court's exercise of personal jurisdiction over the case at bar.[10]

---

[10]In the context of the present issues before the court, the repeated efforts by the Stewarts' counsel to invoke a sympathetic reaction to Breana Faith Stewart's plight

The Stewarts have erred by implying that the minimum contacts required for personal jurisdiction must be contacts with the federal district, rather than the state, where the pertinent court is located.   For purposes of the present personal jurisdiction analysis, the court is to examine the defendants' contacts with the forum state at-large,[11] not just the defendants' contacts with the pertinent federal district within the forum state.   See McFadin v.  Gerber, 587 F.3d 753, 759 (5th Cir. 2009) (stating unequivocally that in the context of a personal jurisdiction inquiry, the "relevant standard for due process" requires the plaintiff to show that the defendant availed himself of the benefits and protections of "the forum state" by establishing minimum contacts with "the forum state").[12]

is, by this judge, found to be inappropriate.

[11]It is well-established that "[a] defendant is amenable to the personal jurisdiction of a federal court sitting pursuant to diversity jurisdiction to the same extent that he would be amenable to such jurisdiction in a state court of the forum." Pedelahore v. Astropark, Inc., 745 F.2d 346, 347 (5th Cir. 1984); see also Busch v. Buchman, 11 F.3d 1255, 1258 (5th Cir.  1994) ("In cases where a state is attempting to get extraterritorial jurisdiction over a defendant, the inquiry is whether the defendant has had minimum contacts with the state.").

[12]The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. See  Burger King Corp.  v.  Rudzewicz, 471 U.S. 462, 471-72; 105

The Stewarts also erred when they suggested that in the course of its personal jurisdiction analysis this court must only consider contacts with the forum state which occurred during the period of time preceding and including the time when Praetorian filed suit in this court. As previously noted, the Stewarts did not cite any case law from the Supreme Court or the Fifth Circuit to support this contention. This circuit's case law supports only part of the Stewarts' argument. The Fifth Circuit has found that when a court is determining whether or not there is "*general jurisdiction*," the court should evaluate the defendant's contacts with the forum state "over a reasonable number of years, *up to the date the suit was filed*." Johnston, 523 F.3d at 610 (emphasis added); see also Asarco, Inc., 912 F.2d at 787 n.1 (stating the same principle in the context of a *general* jurisdiction analysis). Considering this temporal limit and the evidence presented by Praetorian, the court does not find sufficient contacts to establish *general* personal jurisdiction [13] over the Stewarts.

---

S.Ct. 2174, 2181 (1985). "This protection operates to restrict *state* power." Id. at 472 n.13, 105 S.Ct. 2182 n.13 (emphasis added).

[13]Praetorian's argument that general jurisdiction exists in this court as to claims involving the Stewarts is short and based entirely on the actions the Stewarts took to initiate their lawsuit in Orleans Parish. See Record Document 15 at 7-8. For example, in their arguments regarding general jurisdiction, Praetorian references the Stewarts' retention of counsel in Louisiana, filing suit in Orleans Parish, paying

However, the court is not aware of a case in which the Supreme Court or the Fifth Circuit has specifically imposed this same temporal limit on the concept of specific jurisdiction.

Two district courts in this circuit have held that specific jurisdiction must be determined based upon facts existing at the time plaintiff filed its original complaint. See Mgmt. Insights Inc. v. CIC Enters., Inc., 194 F.Supp. 2d 520, 525 (N.D. Tex. 2001); Glazier Group, Inc. v. Mandalay Corp., No. H-06-2752, 2007 WL 2021762, at *8 (S.D. Tex. July 11, 2007). However, excepting the Glazier Group Incorporated court's citation to the Management Insights Incorporated decision, the only intra-circuit authority these courts cited in support of this

a filing fee in Louisiana, and requesting service on Auguillard's registered agent in Independence, Louisiana through the Tangipahoa Parish sheriff. See id. at 8. It seems apparent that most of these contacts occurred after the instant lawsuit was filed by Praetorian, and thus these contacts cannot be considered for purposes of a *general jurisdiction* analysis under binding Fifth Circuit precedent. See Johnston, 523 F.3d at 610; see also Asarco, Inc., 912 F.2d at 787 n.1. Furthermore, even if this court were to assume that some of the referenced contacts occurred prior to time when Praetorian filed this lawsuit in this court, general jurisdiction would not be established, without more. In Johnston, the Fifth Circuit reviewed several previous cases to emphasize how "difficult it is to establish general jurisdiction." Johnston, 523 F.3d at 610-11. After a review of the Johnston decision, this court is confident that the few contacts Praetorian asserts the Stewarts may have had with Louisiana prior to the moment when Praetorian filed the instant lawsuit would not be sufficient to establish general jurisdiction in this court.

proposition, and the primary basis for these holdings, was a citation to footnote one in the Fifth Circuit's decision in Asarco, Inc., 912 F.2d at 787 n.1 ("the relevant time for determining jurisdiction is the filing of the complaint"). However, this footnote was clearly not designed to address specific jurisdiction. In Asarco, Inc., the Fifth Circuit concluded its discussion of *specific jurisdiction* at the top of page 787.  See Asarco, Inc., 912 F.2d at 786-87.  The court then initiated a new paragraph, and proceeded to review the plaintiff's alternative contention that the defendant had "sufficient contacts with Louisiana to support *general jurisdiction*." See id. at 787 (emphasis added).  In the middle of its *general jurisdiction* analysis, the panel added the aforementioned footnote one, and asserted that certain phone calls made by the defendant to individuals in the forum state could not be considered when determining whether *general jurisdiction* existed over the defendant at issue because "the relevant time for determining jurisdiction is the filing of the complaint." See id. at 787 n. 1.  This statement was clearly made in the context of the court's discussion of general jurisdiction, *not specific jurisdiction*. The Fifth Circuit has since reaffirmed this temporal limit on the contacts analysis *specifically in the context of general jurisdiction*.  See Johnston, 523 F.3d at 610

24

(quoting <u>Access Telecom, Inc. v. MCI Telecomms. Corp.</u>, 197 F.3d 694, 717 (5th Cir. 1999)) ("*General jurisdiction* can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.").

In the absence of a citation to binding authority from the Fifth Circuit or the Supreme Court which directs this court to restrict its review of contacts in the course of its specific jurisdiction analysis to the time period preceding the moment Praetorian filed suit in this court, this court declines to impose such a restriction. The court notes that several other courts have found that such a temporal restriction is not warranted in all circumstances. <u>Accord Endless Pools, Inc. v. Wave Tec Pools, Inc.</u>, 362 F.Supp. 2d 578, 583-84 (E.D. Pa. 2005); <u>Educ. Testing Serv. v. Katzman</u>, 631 F.Supp. 550, 554-57 (D.N.J. 1986).

In the course of a specific jurisdiction analysis, the court in <u>Educational Testing Services</u> explained:

> [ The language in some cases] suggests that the filing of suit is some watershed mark after which the defendant's activities should not be considered [for purposes of a personal jurisdiction analysis].
> . . . .

[Those courts] have implied that the proper standard for determining whether certain contacts should be considered is the familiar standard found in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), namely, whether consideration of those contacts will offend traditional notions of fair play and substantial justice.

The due process limitations on a court's personal jurisdiction over non-resident defendants is meant to ensure that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign [thus giving] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit [citations omitted]." Burger King Corp. v. Rudzewicz, ---U.S. ----, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Once a defendant has been served with a complaint, he is on notice that he may be subject to jurisdiction in that forum. At that time, perhaps more than at any other, the defendant who wishes to contest jurisdiction, frequently on the advice of lawyers, begins ordering his affairs to show that he has no contacts with the forum state.

To use the date of the filing of a complaint in most cases seems appropriate so that a defendant may not avoid liability by removing himself from the jurisdiction. However, that moment in time should not be graven in stone . . . I fail to see any due process interest which would be served by such immunity.

Id. at 555-56.

Furthermore, based on both Fifth Circuit precedent and statutory law, it appears that if a temporal limit is eventually established in this circuit for the analysis of minimum contacts for purposes of determining specific jurisdiction, then

26

this hypothetical time limit would likely allow a court to consider a defendant's contacts with the forum state which occur prior to the service of a summons or the filing of a waiver of service, rather than simply contacts which occur prior to the time the complaint is filed. In the context of establishing personal jurisdiction, the filing of a waiver of service or the service of a summons are functional equivalents. See Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant"); see also Fed. R. Civ. P. 4(d)(4).[14] The Fifth Circuit has held that:

> [An] analysis of personal jurisdiction is based on *a combination of two elements*, amenability to jurisdiction and service of process. By amenability we refer to the substantive reach of a forum's jurisdiction. *Service of process is the physical means by which jurisdiction is asserted.* These elements *are related* but distinct. Both service and amenability must be present to authorize a district court to adjudicate the rights of the parties.

---

[14]Rule 4(d)(4) of the Federal Rules of Civil Procedure states:

> When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

Fed. R. Civ. P. 4(d)(4).

27

Terry v.  Raymond Int'l, 658 F.2d 398, 401 (5th Cir. 1981) (overruled on other

grounds) (emphasis added); see also Jim Fox Enters., Inc.  v.  Air France, 705 F.2d

738, 741 n.6 (5th Cir. 1983) (same); DeMelo v.  Toche Marine, Inc., 711 F.2d 1260,

1264 (5th Cir. 1983) (same);  Society of Lloyd's v.  Cohen, 108 F.  App'x 126, 127

(5th Cir. 2004) (Per Curiam) (same).   Under this case law, it would seem that

jurisdiction should be determined by examining the conduct of the defendant

leading up to the time of service, i.e., the court should assess whether or not it

"could assert personal jurisdiction over the defendant at the time jurisdiction is

sought to be asserted" through the physical manifestation of service of process or

its equivalent, the filing of a waiver of service. Lachman v.  Bank of Louisiana in

New Orleans, 510 F.Supp.   753, 757 (N.D. Ohio 1981).   In other words, the

appropriate inquiry would seem to be what was the defendant doing or what had the

defendant done when the court actually asserted its authority, reached out and

"haled [the defendant] into a jurisdiction." Burger King Corp., 471 U.S. at 475, 105

S.Ct. at 2183.[15]

---

[15]This theory finds support in the history of the concept of judicial jurisdiction.

At early common law the only way that an English court could obtain
personal jurisdiction over a defendant was to have the sheriff arrest

If this is the appropriate standard, then this court's finding as to specific jurisdiction is still correct.  The Stewarts represent that they filed their lawsuit in state court in Orleans Parish on August 24, 2009.  <u>See</u> Record Document 11 at 2. Again, as explained in this ruling, this is the relevant, related conduct which gives rise to specific jurisdiction in this court in this case. The two waivers of service of process submitted by the Stewarts were executed on September 9, 2009, and were filed in this court on September 24, 2009, after the Stewarts filed suit in Orleans Parish in August of 2009.  <u>See</u> Record Documents 5 and 6.

---

him and bring him into court. Eventually, the requirement that the defendant be arrested was abandoned and personal service of process on the defendant while he was within the jurisdiction was held to suffice. It was immaterial that the defendant was only temporarily in the state. His presence in the state, even for an instant, gave the state judicial jurisdiction over him. If at that time exercise of this jurisdiction was initiated by proper service of process, and if the individual was afforded a reasonable opportunity to be heard, a valid judgment might be entered against him even though he left the state immediately after the service of process.

<u>Restatement (Second) of Conflict of Laws 2d</u> § 28, comment a (1971) (revised in 1988).  Thus, for centuries, judicial jurisdiction was found if at the moment of arrest, and later, *the moment of service*, the defendant was amenable to suit, usually by virtue of being physically present in the pertinent jurisdiction.  <u>See</u> <u>id.</u> at reporter's note and comment a.

**B.     Venue.**

The court will now determine whether venue is proper in this court.  Once a

defendant challenges venue by motion, the burden is on the plaintiff to show that

the chosen venue is a proper one.  See McCaskey v. Continental Airlines, Inc., 133

F.Supp. 2d 514, 523 (S.D. Tex. 2001) (citing Charles Alan Wright et al., Federal

Practice and Procedure § 3826 (2d ed. 1986)). On a Rule 12(b)(3) motion to dismiss

for improper venue, when no evidentiary hearing has been held, the court will

accept as true undisputed facts in the plaintiff's pleadings and resolve any conflicts

in the evidence in the plaintiff's favor.  See Clarendon Nat'l Ins. Co. v. T.M.I.

Enter., L.L.C., No. 07-1637, 2008 WL 3838025, at *2 (W.D. La. Aug. 14, 2009)

(Hicks, J.); Ginter ex. rel. Ballard v. Belcher, Predergast & Laporte, 536 F.3d 439,

448-49 (5th Cir. 2008).

Questions regarding the appropriateness of venue are governed by 28 U.S.C.

§ 1391.  The pertinent part of this statute reads as follows:

> A civil action wherein jurisdiction is founded only on diversity of
> citizenship may, except as otherwise provided by law, be brought only
> in . . . a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred . . . .

28 U.S.C. § 1391(a). "The current language [of section 1391] liberalized the former 'in which the claim arose' formulation [utilized by the statute], and it is now 'absolutely clear' that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." Clarendon Nat'l Ins. Co. v. T.M.I. Enter., L.L.C., No. 07-1637, 2008 WL 3838025, at *1 (W.D. La. Aug. 14, 2009) (Hicks, J.) (citing 14D Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3rd § 3806.1, p. 200 (2007)).

The Western District of Louisiana is an appropriate venue for the declaratory judgment action at bar because a substantial part of the events giving rise to this insurance coverage dispute occurred in the Western District of Louisiana, specifically in Shreveport, Louisiana. The Praetorian policies at issue have at all times been administered in Shreveport, through the offices of Deep South Surplus, Inc. ("Deep South"), a sister company of Praetorian. See Record Document 1 at 2. Praetorian and Deep South are both subsidiaries in a family of companies owned by QBE Speciality Insurance Company. See id. The original application for the Praetorian insurance policies at issue were received and the policies were rated and underwritten in Shreveport. See Affidavit of Lynda McCallon, Record Document

31

15, Ex. 3 at ¶ 5. These policies were bound and generated in Shreveport. See id. at ¶ 6. The policies were issued from Shreveport. See id. at ¶ 8. Praetorian's coverage decisions regarding the Stewart litigation have been made in Shreveport. See id. at ¶ 10. All claims handling activities occurred in Shreveport, and Auguillard's defense costs have been administered from the Shreveport office. See id. at ¶¶ 11-12.

This court's decision regarding venue is in accord with previous decisions issued from the Western District of Louisiana. See Clarendon Nat'l Ins. Co. v. T.M.I. Enters., LLC, No. 07-1637, 2008 WL 3838025, at *2-3 (W.D. La. Aug. 14, 2008); Clarendon Am. Ins. v. Coastal Cargo Co., Inc., No. 07-1046, 2007 WL 3256616 , at *2-4 (W.D. La. Nov. 5, 2007). The reasoning set forth in these opinions to support findings that venue was proper in this district applies with equal force in the present matter.

## C.   Transfer Of Venue.

The Stewarts argue that if venue is proper in the Western District of Louisiana, then this court should transfer the case at bar to the Eastern District of Louisiana. See Record Document 11 at 7-9. Title 28, section 1404 of the United

States Code provides: "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, the Stewarts, as the defendants, bear the burden of demonstrating that the court, in the exercise of its sound discretion, should transfer this case. See Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966). As the statute indicates, the moving party should first demonstrate that the district where the party would like the action transferred to is a district where the case "might have been brought." See 28 U.S.C. § 1404(a). The Stewarts argue that the instant action could have been filed in the Eastern District of Louisiana under 28 U.S.C. § 1391(a)(2), since the Auguillard contract was being performed there, and New Orleans was the place where Auguillard allegedly failed to hire qualified workers. See Record Document 11 at 8. Praetorian does not dispute this assertion. Moving beyond this threshold issue, the court must now consider several public and private interest factors to determine if the convenience of the parties and witnesses and the interest of justice is best served by a transfer of venue, including: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance

33

of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive; (5) the

administrative difficulties flowing from court congestion; and (6) the local interest

in having localized interests decided at home.  See In re Volkswagen of Am., Inc.,

545 F.3d 304, 315 (5th Cir.2008).[16]  The court notes that:

> Although a plaintiff's choice of venue is not a distinct factor in the
> venue transfer analysis, it is nonetheless taken into account as it places
> a significant burden on the movant to show good cause for the transfer.
> [A proper venue transfer] analysis directly manifests the importance
> that [] must [be] give[n] to the plaintiff's choice.

See id. at 315 n.10.

> [W]hen the transferee venue is not clearly more convenient than the
> venue chosen by the plaintiff, the plaintiff's choice should be re-
> spected. When the movant demonstrates that the transferee venue is
> clearly more convenient, however, it has shown good cause and the
> district court should therefore grant the transfer.

See id. at 315. Moreover, a party seeking a transfer for the convenience of witnesses

should specify the key witnesses and make a general statement of what their

testimony will cover. See Wilson v. Ameristar Casino Vicksburg, Inc., No.  07-

---

[16]These factors are "not necessarily exhaustive or exclusive," moreover, "none
... can be said to be of dispositive weight." In re Volkswagen of Am., Inc., 545 F.3d
at 315(quotations and citation omitted).

34

0297, 2007 WL 2284608, at *5 (W.D.La.  July 10, 2007). In light of all of these considerations, the court finds that the Stewarts have failed to demonstrate that the Eastern District of Louisiana is "clearly more convenient than the venue chosen by the plaintiff." In re Volkswagen of Am., Inc., 545 F.3d at 315.  Thus the plaintiff's choice of venue should be respected.  See id.

To support their motion to transfer venue, the Stewarts chiefly rely on the argument that allowing the case at bar to remain in this federal district would unnecessarily lead to greater health risks for Breana Faith Stewart as she seeks to travel to court proceedings in Shreveport, Louisiana, which is approximately 429 miles from her place of residence, as opposed to court proceedings in New Orleans, Louisiana, which is approximately 176 miles from her place of residence.  See Record Document 11 at 8; Record Document 11, Ex. A. Breana Faith Stewart was four years old at the time the motions under review were filed, and is presently a "ventilator dependent quadriplegic."  See Record Document 15 at 14; Record Document 11, Ex. A at 2. The court agrees with Praetorian, that the testimony of a four-year-old child has no apparent bearing on the questions raised by Praetorian's instant declaratory judgment action, i.e., whether the language in two insurance

35

policies contemplates coverage of the injuries incurred by the Stewarts allegedly through the actions of Johnson. The case at bar will likely require few, if any, court appearances. See Record Document 15 at 14 n. 8.[17] Thus, while the court is sympathetic to Breana Faith Stewart's health concerns, the court finds these concerns are not pertinent to the present analysis.

The Stewarts also assert that the location of potentially relevant evidence weighs in favor of a transfer to the Eastern District of Louisiana. See Record Document 11 at 8. The Stewarts argue that the evidence which will show whether Auguillard has liability for the Stewarts' injuries, i.e., evidence which will delineate the precise relationship, if any, Johnson had to Auguillard, "exists primarily in either New Orleans, or Alabama, not in Shreveport." Id. The court presumes that

---

[17]Praetorian has also argued as follows:

> To the extent the Stewarts feel compelled to bring the minor to a trial where her presence or testimony would be required, it is unclear how the additional travel to Shreveport poses such an increased risk (as compared to New Orleans). The Stewarts' protestations regarding travel are belied by the fact that they voluntarily dismissed their suit in Alabama [,their place of residence,] to pursue Auguillard in Louisiana.

Record Document 15 at 14.

most of the evidence pertaining to the alleged relationship Auguillard had with Johnson is in the form of documentation which can be submitted to a court in either the Western or Eastern Districts of Louisiana with relative ease. If a witness is required to appear in this court to testify to this issue, this court will not presume, without more, that requiring such a witness to travel from New Orleans to Shreveport will present such a hardship as to merit transferring the present case to the Eastern District of Louisiana. See Clarendon Am. Ins. v. Coastal Cargo Co., Inc., No. 07-1046, 2007 WL 3256616, at *4 (W.D. La. Nov. 5, 2007).[18]

Finally, the Stewarts argue that if this case is transferred to the Eastern District of Louisiana, it could be consolidated with the case presently pending in that court, allowing for some potential judicial efficiency to be realized. Furthermore, while the Stewarts admit that the Western District of Louisiana has some

---

[18]In Clarendon, supra, the court stated:

> If there are any witnesses in the New Orleans area, their burden will be slight. One may travel between New Orleans and Shreveport in less than six hours and without leaving an interstate or four-lane highway. Litigants, attorneys and judges routinely make the trip without undue difficulty.

Clarendon, supra, at *4. This reasoning applies with equal force in the case at bar.

37

interests in the present matter since Praetorian's sister company is located in this district, they contend that the Eastern District of Louisiana has a greater vested interest as this case concerns the quality of workers contracted to complete post-Katrina repair work. See Record Document 11 at 8-9. While these arguments have some merit, this court does not believe they establish that the Eastern District of Louisiana is "clearly more convenient than the venue chosen by the plaintiff." See In re Volkswagen of Am., Inc., 545 F.3d at 315. Accordingly, the Stewarts' request for a transfer of venue is denied.

### III. CONCLUSION

Based on the foregoing analysis, the Stewarts' motion to dismiss or to transfer venue (Record Document 11) is hereby **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this *20th* day of May, 2010.

_____
JUDGE TOM STAGG

38